UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN JOHN NUMAN,<br><br>                                    Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Acting Commissioner of Social Security,<br><br>                                  Defendant. | Case No.:  20-CV-1978-WVG<br><br>**ORDER ON JOINT MOTION FOR JUDICIAL REVIEW** |

**I.  INTRODUCTION**

     On June 8, 2018, Julian Numan ("Plaintiff") applied for disability insurance benefits under Title II of the Social Security Act ("Title II" or "Act"). (AR 182-188.) Andrew Saul, Acting Commissioner of Social Security ("Commissioner" or "Defendant"), twice denied Plaintiff's application – initially, on August 21, 2018, and upon reconsideration on October 12, 2018. (AR 111-115; 122-126.) This action followed on October 7, 2020. (Doc. No. 1.) Pending before the Court are the Parties' December 2, 2021 Joint Motion for Judicial Review ("Joint Motion") and February 16, 2022 Joint Supplemental Brief of the Medical Evidence. (Doc. Nos. 23, 25.) Having reviewed and considered the Parties' submissions,

the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed for disability insurance benefits under Title II on June 8, 2018, and alleged his disability commenced on October 30, 2012. (AR 182-188.) On August 21, 2018, the Commissioner denied Plaintiff's initial application. (AR 111-115.) On September 12, 2018, Plaintiff requested reconsideration of the Commissioner's decision. (AR 121.) One month later, on October 12, 2018, the Commissioner denied Plaintiff's request for reconsideration. (AR 122-126.) On October 16, 2018, Plaintiff sought a de novo hearing before Administrative Law Judge ("ALJ") Andrew Verne. (AR 128-129.) On August 14, 2019, ALJ Verne convened a hearing on Plaintiff's application for disability insurance benefits. (AR 39-87.) Plaintiff and impartial vocational expert Nelly Katsell testified at the hearing. (*Id*.) On October 23, 2019, ALJ Verne issued his Notice of Decision and denied Plaintiff benefits. (AR 22-33.) On November 1, 2019, Plaintiff requested that the Appeals Council review ALJ Verne's adverse decision. (AR 178.) On August 18, 2020, the Appeals Counsel denied Plaintiff's request for review and, in doing so, finalized ALJ Verne's decision. (AR 7-12.) On October 7, 2020, Plaintiff commenced this litigation, seeking judicial intervention on his application for Title II benefits through the Social Security Administration ("SSA"). (Doc. No. 1.)

## III. FACTUAL BACKGROUND

### a. Plaintiff's Medical History

Plaintiff is 55 years old and alleges he suffers physical and mental impairments that have left him disabled and unable to work. (AR 32.) Regarding his physical limitations, Plaintiff contends he suffers from pain in his lumbar spine, right knee, and right shoulder and moderate chondromalacia in his right knee. (AR 305-308; 432; 450; 509; 538; 600-602; 740; 1399; 1412.) Since 2012, Plaintiff received treatment and underwent medical procedures for his physical ailments, most notably Orthovisc injections in his right knee between 2012 and 2015, an injection in his right shoulder on October 9, 2013, an epidural

injection in his back on April 1, 2014, and arthroscopic and decompression surgery in his right shoulder on November 26, 2014. (AR 307-307; 310; 600-602; 409; 432; 437; 439; 506; 509; 517; 570; 1404; 1414.)

Regarding his mental impairments, Plaintiff contends he suffers from severe anxiety, trouble sleeping, and bipolar disorder. (AR 310; 369; 500; 615; 617.) Since 2013, Plaintiff has been prescribed and medicates with Diazepam, more commonly known as Valium. (AR 497; 524; 737; 742.) Notwithstanding Plaintiff's prescription, Plaintiff's medical records spanning March 2013 through January 2015 do not indicate a diagnosis for any mental health condition. (AR 310, 369-370; 506-507; 538-539; 547-548.) Further, medical records spanning April 2013 through January 2015 indicate Plaintiff was oriented to person, place, and time and had an appropriate mood and affect. (AR 369; 412; 422; 424; 427, 443.) Additionally, between April 2013 and May 2014, Plaintiff's healthcare providers found no evidence of depression, anxiety, or bipolar disorder during their examinations of Plaintiff. (AR 412; 422; 424; 427, 443.) For the three years following his June 30, 2015 date last insured, Plaintiff did not seek or obtain any mental health treatment. (AR 605-618.) In light of his collective impairments, Plaintiff has not performed any gainful activity since the onset of his disability. (AR 31.) Prior to his alleged disabling condition, Plaintiff worked as a cashier, sales representative in leather goods and security systems, security guard, and field artillery crew member. (*Id*.)

### b. Dr. Dobecki's Assessment of Plaintiff

Dr. Douglas Dobecki is Plaintiff's treating physician and has seen Plaintiff since 2008. (AR 619.) In relevant part, on October 25, 2018, Dr. Dobecki completed a Physical Residual Functional Capacity Questionnaire in connection with Plaintiff's disability benefits application with the Social Security Administration. (AR 619-625.) Regarding Plaintiff's physical health, Dr. Dobecki identified knee pain and osteoarthritis, lumbar pain and spondylosis, and cervical spondylosis as Plaintiff's disabling conditions. (AR 625.) Dr. Dobecki also opined Plaintiff was unable to work to any extent because he experienced chronic pain and no position would be sufficiently comfortable to permit Plaintiff to work.

(AR 620.) Regarding Plaintiff's mental health, Dr. Dobecki noted Plaintiff suffers from bipolar, anxiety, and post-traumatic stress disorders, insomnia, difficulty with concentration, lack of focus, and confusion. (AR 625.)

### c. Plaintiff's Other Health Assessments

Plaintiff was evaluated by other physicians, psychiatrists, and psychologists for his physical and mental ailments dating to the relevant time period, namely Dr. Leonard H. Naiman; Dr. Gideon H. Lowe III; Dr. H. Amado; Dr. Joseph Mawhinney; Dr. Anna Stern; and Dr. Preston Davis. Taken together, these medical assessments of Plaintiff's condition were either inconclusive or unremarkable. On August 14, 2018, Dr. Naiman determined the record was insufficient to fully evaluate Plaintiff's physical functions; Dr. Lowe later affirmed Dr. Naiman's determination on October 3, 2018. (AR 99; 105-106.) On August 15, 2018, Dr. Amado, a psychiatrist, opined Plaintiff's spinal disorder is severe from a psychiatric review perspective and found there was insufficient evidence to substantiate the presence of depression, bipolar, anxiety, trauma, or stress-related disorders. (AR 95-96) On August 31, 2018, Dr. Mawhinney, another psychiatrist, assessed Plaintiff's mental health and concluded Plaintiff was limited in sustaining concentration and persistence and in maintaining social functioning. (AR 582-583.) On that same day, Dr. Stern observed Plaintiff has some physical limitations in reaching due to tendinitis in both elbows and arthritis of both wrists. (AR 577.) On October 11, 2018, Dr. Davis, a psychologist, opined the same as Dr. Amado, namely that Plaintiff's spinal disorder is severe from a psychiatric review perspective but there was inadequate evidence to substantiate the presence of depression, bipolar, anxiety, trauma, or stress-related disorders. (AR 106-107.)

### d. ALJ Verne's October 23, 2019 Decision

Plaintiff and Nelly Katsell, an impartial vocational expert, appeared at the administrative hearing on Plaintiff's disability benefits application. (AR 25.) Carl Kreibich appeared as counsel on Plaintiff's behalf. (*Id*.) ALJ Verne examined whether Plaintiff was disabled under and met the insured status requirements of sections 216(i) and 223(d) of the Social Security Act. (AR 26.) ALJ Verne concluded Plaintiff was not disabled within the

meaning of the Act between October 30, 2012 through the date last insured and made ten findings in his Notice of Decision (AR 26):

(1) Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2015;

(2) Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of October 30, 2012 through his date last insured of June 30, 2015 (citing 20 C.F.R. § 404.1571, *et seq*.);

(3) Plaintiff has one severe impairment, namely degenerative disc disease of the lumbar spine and that it significantly limited Plaintiff's ability to perform basic work activities (citing 20 C.F.R. § 404.1520(c)). Concurrently, ALJ Verne noted Plaintiff has a host of non-severe impairments, specifically diverticulitis and degenerative joint disease of the shoulder, hips, and right knee. ALJ Verne added neither imaging nor examinations are significant, despite Plaintiff's self-reported ongoing joint pain, 2011 right knee surgery, and 2014 right shoulder surgery;

(4) Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met the severity of one of the listed impairments in 20 C.F.R 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). ALJ Verne elaborated Plaintiff's spine impairment fails to meet or equal listing 1.04 with demonstrated persistence of signs including motor atrophy and reflex or sensory abnormalities;

(5) Through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the exception of certain limitations: Plaintiff could occasionally climb ramps and stairs but never climb ropes, ladders, or scaffolds as well as balance, stoop, kneel, crouch, and crawl; had to avoid concentrated exposure to vibration as well as hazards including unprotected heights and dangerous moving machinery; can frequently reach overhead bilaterally; and required close proximity to a restroom, namely one located in the same building. ALJ Verne averred he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as

consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p" and he "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. § 404.1520c." (20 C.F.R. § 404.1567(a));

(6) Through the date last insured, Plaintiff was unable to perform any past relevant work. To support his conclusion, ALJ Verne cited to the vocational expert's testimony that Plaintiff's RFC precludes Plaintiff from performing any of his past relevant work. (20 C.F.R. § 404.1565);

(7) Plaintiff was born on August 15, 1966 and was 48 years old, which is defined as a younger individual age 45-49, on the date last insured (20 C.F.R. § 404.1563);

(8) Plaintiff has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564);

(9) The transferability of Plaintiff's job skills is immaterial to ALJ Verne's disability determination because the Medical-Vocational Rules support a finding that Plaintiff is "not disabled," regardless of whether he has transferable job skills (SSR 82-41; 20 C.F.R. § 404(P)(Appendix 2); and

(10)   Through Plaintiff's date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed given his age, education, work experience, and RFC. (20 C.F.R. 404.1568; 404.1569(a)). ALJ Verne accepted the vocational expert's testimony that Plaintiff's limitations permitted him to work as a document preparer, a ticket counter, and an order clerk in the food and beverage industry. (AR 32-33.) In doing so, ALJ Verne noted the vocational expert's testimony was consistent with the Dictionary of Occupational Titles ("DOT") and that any testimony on limits not contemplated by the DOT was based on the vocational expert's professional knowledge and experience. (AR 25-33.)

/ / /

/ / /

/ / /

## IV. LEGAL STANDARD

### a. Title II Analysis

Title II of the Social Security Act provides for disability insurance benefits to claimants who can establish they (1) suffer from a medically determinable impairment that has endured or can be expected to endure for at least 12 consecutive months or is reasonably likely to result in death; and (2) cannot perform the work they previously performed or any other gainful work the national economy offers because of an impairment. 42 U.S.C. § 423(d)(2)(A). At all times, an individual seeking such benefits bears the burden of establishing his disability and that the nature of his condition necessitates disability insurance benefits. *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2007); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). Where a claimant makes this showing, the burden shifts to the Commissioner to prove the claimant is still able to work and there is work available for him. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

To evaluate whether a claimant is qualified under the Act, the court undertakes a five-step inquiry that asks whether (1) the claimant is presently working in a substantially gainful activity; (2) the impairment at issue is severe; (3) the impairment "meets or equals" one of the list of impairments itemized in the Social Security Regulations; (4) the claimant is able to perform any work that he has not previously performed; and (5) the claimant is able to perform any other work, where, if so, the Commissioner bears the burden of proving "that there are a significant number of jobs in the national economy that the [applicant] can do." 20 C.F.R. § 404.1520 (1999). The court's inquiry ends where a claimant is found to be "disabled" or "not disabled" at any step in the analysis. *Id*.

### b. Judicial Review of Administrative Decision on Title II Applications

Section 405(g) of the SSA authorizes unsuccessful claimants to seek judicial review of the Commissioner's final administrative decision. 42 U.S.C. § 405(g). The scope of judicial review is limited, as the Commissioner's denial of benefits "will be disturbed only if it not supported by substantial evidence or is based on legal error." *Brawner v. Sec'y of*

*Health and Human Servs.*, 830 F.2d 432, 433 (9th Cir. 1988); *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (substantial evidence is "more than a mere scintilla" but less than a preponderance). The court must consider the record in its totality, weighing evidence that both supports and undercuts the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). Concurrently, where the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Under such circumstances, deference is mandated. *Bayliss*, 427 F.3d at 1214 n.1; *Sandgathe*, 108 F.3d at 980.

## V.     DISCUSSION

### a. ALJ Verne's RFC Assessment

Plaintiff first argues substantial evidence does not underlie ALJ Verne's assessment of Plaintiff's RFC, which, in turn, discredits ALJ Verne's finding of non-disability. As a threshold matter, Title II qualifies an individual as disabled if he cannot work or engage in substantial gainful activity for a period of 12 continuous months due to a medically determinable impairment. 42 U.S.C. §§ 423(d)(1)-(2). In seeking disability insurance benefits under the Act, the claimant bears the burden of establishing – prior to the date last insured – the existence of a severe impairment, and, ultimately, disability. *Artis v. Barnhart*, 97 F. Apex 740, 741 (9th Cir. 2004) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.1998)); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995). Equally important, the ALJ, rather than the claimant's treating physician, "is considered the final arbiter in resolving ambiguities in the medical evidence; thus, his conclusions are subject to substantial deference." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Court finds ALJ Verne's Notice of Decision rests on substantial evidence. As a foundational matter, the Notice of Decision expressly reflects ALJ Verne considered all of the evidence in the record in reaching his findings of fact and ultimate conclusion of non-disability. (AR 27.) To that end, ALJ Verne provided a comprehensive assessment of the

objective medical evidence, Plaintiff's testimony, treating physician Dr. Dobecki's opinion, Drs. Stern and Maehinney's opinions, and the prior administrative medical findings. Specifically, ALJ Verne pointed to "unremarkable" x-rays of Plaintiff's lumbar spine in 2013, a 2013 spinal magnetic resonance imaging ("MRI") that "was negative for herniated disc, stenosis, instability, or loss of lordosis, with at most 'mild degenerative changes,'" medical observations in 2013 that showed "no loss of range of motion and normal neurological signs," an "unremarkable" evaluation in 2014 that revealed "full strength and normal gait," and that "even on subsequent evaluations, [Plaintiff] was observed to have normal strength and gait and the updated MRI found no stenosis of the nerve roots." (AR 30.) ALJ Verne also cited to Plaintiff's own admissions that he had "near complete pain relief" for 11 months after receiving a joint injection on July 17, 2013 and that, "during hospitalization on May 5, 2015, [Plaintiff] did not report any significant symptoms" (*Id.*) Further, ALJ Verne considered Dr. Dobecki's determination of "extensive limitations" and properly discounted it for its inconsistency with "[Dr. Dobecki's] own treating notes, which observe ongoing normal gait and no notable neurological dysfunction for much of the period" as well as Plaintiff's self-reported "relief with injections." (AR 31.) Plaintiff posits ALJ Verne erred when he did not fully credit Dr. Dobecki's opinion. However, Plaintiff's argument ignores that ALJs are "not required to incorporate evidence from the opinions of treating physicians" where such opinions contradict objective medical records, which is the case here. *Batson*, 359 F.3d at 1197 (citing *Johnson*, 60 F.3d at 1433; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).).

Having considered the totality of this evidence, ALJ Verne opined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but, concurrently, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (AR 30.) ALJ Verne's resulting RFC assessment was underpinned by citations to Plaintiff's medical records as well as Plaintiff's own testimony and medical expert opinions, which were assigned weight based on their consistency, or

lack thereof, with the objective evidence. Thus, Plaintiff's contention that the Notice of Decision is unsupported by substantial evidence is simply belied by the record.

Moreover, ALJ Verne's evaluation did not require the inclusion of every impairment in the final RFC because the record revealed there was no significant limitation in Plaintiff's ability to work. *Janko v. Kijakazi*, 2021 WL 4245386, at *3 (S.D. Cal. Sept. 17, 2021) (citing *Kendall v. Saul*, 2021 WL 736268, at *13 (E.D. Cal. Feb. 25, 2021); *Koshak v. Berryhill*, 2018 WL 4519936, at *8 (C.D. Cal. Sept. 19, 2018); *Banks v. Berryhill*, 2018 WL 163127, at *4 (C.D. Cal. Apr. 2, 2018).)."So long as the ALJ 'actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment [in the RFC determination], the ALJ has not committed legal error.'" *Kendall*, 2021 WL 73628, at *13 (E.D. Cal. Feb. 25, 2021); *McIntosh v. Berryhill*, 2018 WL 3218105, at *4 (C.D. Cal. June 29, 2018) (deciding that, because the ALJ concluded a mental impairment caused no more than minimal restrictions, there was no requirement to include it in the claimant's RFC). As analyzed, ALJ Verne undertook a rigorous study of the record and cited to what amounts to substantial evidence in determining Plaintiff was not disabled.

Given the above, the Court strains to find any reason to disturb ALJ Verne's RFC assessment. Plaintiff argues ALJ Verne's RFC assessment cannot stand in the absence of a medical opinion indicating Plaintiff could perform sedentary work. Not so. As observed, Ninth Circuit precedent makes clear that the ALJ – rather than a claimant's physician – is exclusively charged with determining the RFC, and such assessment must consider and weigh all evidence that exists within the record. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (commenting "it is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity"); *Tommasetti*, 533 F.3d 1035, 1041 (9th Cir. 2008) (same). The record here was neither ambiguous nor inadequate as the Court finds substantial evidence underlies ALJ Verne's Notice of Decision. Certainly, the absence of evidence favorable to Plaintiff did not confer a duty upon ALJ Verne to develop the record for Plaintiff's benefit; Plaintiff bore the burden of proof to

establish his own disability, not ALJ Verne[1]. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (opining that, because "substantial evidence supported the ALJ's decision that [claimant] was not disabled," the ALJ "had no duty to develop the record"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (determining an ALJ's duty to develop the record further is triggered only when the record is ambiguous or inadequate to allow for proper evaluation of the evidence).

Further, although Plaintiff invites the Court to consider medical records and purported exacerbations of Plaintiff's disabling conditions that exceed the scope of the relevant time period, Court declines to do so. Courts must consider evidence dating to the relevant time period and nothing beyond those bounds. *Artis*, 97 F. App'x at 741 (holding claimant bears the burden of demonstrating disability existed prior to the date last insured) (citing *Tidwell*, 161 F.3d at 601; *Johnson*, 60 F.3d at 1432). Throughout the administrative proceedings, ALJ Verne considered the entirety of the record as it pertains to the relevant time period of October 30, 2012 through June 30, 2015. Equally notable, ALJ Verne invited Plaintiff to submit further evidence by leaving the record open for an additional two weeks following the conclusion of the August 14, 2019 administrative hearing. (AR 43-44; 65-66; 84-86.) Plaintiff submitted nothing in response. ALJ Verne's RFC assessment accounts for Plaintiff's failure to meet his burden, and the Court will not unravel ALJ Verne's assessment without basis in fact.

---

[1] Further, Plaintiff implicitly concedes his testimony at the administrative hearing does not vindicate his argument that ALJ Verne's RFC assessment is unsound. ALJ Verne discounted Plaintiff's testimony regarding his symptom's intensity, persistence, and limiting effects after his testimony proved at odds with the results of Plaintiff's x-rays, MRIs, and medical evaluations as well as Plaintiff's own admissions during his medical appointments. (AR 30-31.) Tellingly, Plaintiff does not dispute on summary judgment ALJ Verne's decision to place less weight on Plaintiff's testimony.

### b. ALJ Verne's Regulatory Compliance

Plaintiff next contends ALJ Verne failed to comply with the Act's regulatory requirement to complete a psychiatric review technique form in light of Plaintiff's purported mental impairments. The applicable regulations provide a medically determinable impairment "must be established by objective medical evidence from an acceptable medical source," and the SSA "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521. As a foundational matter, the ALJ must consider the limiting effect of all impairments, including those that are non-severe, in assessing a claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). At the same time, an ALJ need not include limitations in the RFC if the record supports a conclusion that the non-severe impairment does not cause a significant limitation in the claimant's ability to work. *Cruz v. Kijakazi*, 2022 WL 272010, at *3 (S.D. Cal. Jan. 28, 2022) (citing *Koshak v. Berryhill*, 2018 WL 4519936, at *8 (C.D. Cal. Sept. 19, 2018) and *Banks v. Berryhill*, 2018 WL 163127, at *4 (C.D. Cal. Apr. 2, 2018).). Such is the case here.

ALJ Verne determined the objective medical evidence failed to demonstrate Plaintiff suffered from the mental impairments Plaintiff alleged prior to his June 30, 2015 date last insured. Despite Plaintiff's medical records reflecting Valium prescriptions between March 2013 and January 2015, ALJ Verne observed that none of those records referenced diagnoses for any mental health condition. (AR 310, 369-370; 506-507; 538-539; 547-548.) ALJ Verne also cited to medical records spanning April 2013 through January 2015 that revealed Plaintiff was oriented to person, place, and time and had an appropriate mood and affect. (AR 369; 412; 422; 424; 427, 443.) Further, between April 2013 and May 2014, Plaintiff's health providers expressly denied finding evidence of depression, anxiety, or bipolar disorder during their examinations of Plaintiff. (AR 412; 422; 424; 427, 443.) ALJ Verne accounted for these objective records in determining Plaintiff failed to substantiate his purported mental impairments. For this reason, ALJ Verne did not complete a

psychiatric review technique form and further investigate Plaintiff's alleged mental impairments. There was simply no basis to do so under the regulations and the lack of facts presented. 20 C.F.R. § 404.1521 ("After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe."); *Coleman v. Colvin*, 524 F. App'x 325, 326 (9th Cir. 2013) (finding claimant's failure to establish a medically determinable mental impairment obviated the ALJ's "duty to apply the special psychiatric review technique and determine [claimant's] degree of functional limitation") (citing *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir.2011); *see also* 20 C.F.R. § 404.1520a(b)); *Moore v. Comm'r of Soc. Sec.*, 500 F. App'x 638, 640 (9th Cir. 2012) (concluding the "ALJ's failure to follow the psychiatric review technique…. was harmless because [claimant] did not present sufficient evidence to demonstrate a colorable claim of mental impairment"); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (commenting "an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence").

As discussed, Plaintiff's citations to medical records surpassing the relevant time period have no bearing on the propriety of ALJ Verne's ultimate determination of non-disability and underlying findings of fact. Separately, Plaintiff's reliance on his self-reported symptoms to demonstrate an impairment, given the numerous inconsistencies ALJ Verne identified within the objective medical record, are equally unpersuasive. Moreover, as long the ALJ "actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment [in the RFC determination], the ALJ has not committed legal error." *Medlock v. Colvin*, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016); *McIntosh v. Berryhill*, 2018 WL 3218105, at *4 (C.D. Cal. June 29, 2018) (opining that, because the ALJ concluded that a mental impairment caused no more than minimal restrictions, there was no requirement to include it in the claimant's RFC). ALJ Verne's Notice of Decision reflects a thorough review of the record and is laden with supporting evidentiary citations in concluding Plaintiff failed to substantiate his mental

impairment. Accordingly, ALJ Verne was under no obligation to develop the record by completing the psychiatric review technique form, consistent with the statutory regulations. Plaintiff's argument to the contrary is unavailing.

### c. ALJ Verne's Assessment of Dr. Dobecki's Opinion

Plaintiff next argues ALJ Verne improperly discounted Dr. Dobecki's opinion as Plaintiff's treating physician. In so contending, Plaintiff ignores the legal standard for evaluating medical evidence that applies to actions brought under the Social Security Act on or after March 27, 2017, as here. The 2017 revised regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520(c)(a) (2017). Therefore, no special considerations applied to Dr. Dobecki's opinion when ALJ Verne considered and weighed the opinion. Instead, ALJ Verne's inquiry turned on the credibility of each medical opinion offered into evidence as well as prior administrative medical findings. 20 C.F.R. § 404.1520(c)(b)(2) (2017); *Lambert v. Saul*, 980 F.3d 1266, 1274-1275 (9th Cir. 2020) (commenting, in dicta, that courts must "defer to the SSA's intervening interpretation of the statute, which is a reasonable one") (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).).

The Court finds ALJ Verne appropriately assessed Dr. Dobecki's opinion even under the stricter standard Plaintiff argues should apply. *See Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995) (a treating physician's opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record") (citing *Andrews*, 53 F.3d at 1043). ALJ Verne's Notice of Decision expressly identifies inconsistencies between Dr. Dobecki's ultimate conclusions on the state of Plaintiff's health and the objective medical records informing Dr. Dobecki's findings. Most notably, Dr. Dobecki's conclusion that Plaintiff suffered "extensive limitations" did not align with "[Dr. Dobecki's] own treating notes, which observe ongoing normal gait and no notable neurological dysfunction for much of the period." (AR 31.) Further, Plaintiff self-reported

he experienced "near complete pain relief" for 11 months after receiving a joint injection on July 17, 2013 and that, "during hospitalization on May 5, 2015, [Plaintiff] did not report any significant symptoms" (AR 30.) Despite Plaintiff's admissions signaling an improvement in his condition, Dr. Dobecki still found signification limitations without explanation for the discrepancy. *See Seltser v. Comm'r of Soc. Sec.*, 2014 WL 1292904, at *25 (S.D. Cal. Mar. 28, 2014); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir.1999) (opining a treating physician's opinion that was primarily informed by claimant's own accounts of symptoms and limitations may be disregarded where those complaints have been properly discounted).

Where there is a delta between a medical opinion and the objective record, an ALJ may indeed properly discount the opinion for lack of supporting objective evidence. *Shephard v. Berryhill*, 722 F. App'x 641, 643 (9th Cir. 2018); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1463 (9th Cir. 1995). Further, in considering whether an ALJ has properly rejected a doctor's opinion, the court must rely only on the ALJ's stated bases for rejecting the claimant's disability claims. *Haas v. Saul*, 2021 WL 615053, at *3–4 (S.D. Cal. Feb. 17, 2021) (citing *Garrison*, 759 F.3d at 1009 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely"); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). Here, ALJ Verne made clear he assigned less weight to Dr. Dobecki's opinion exclusively because of its numerous inconsistencies with the objective medical record – a reality that Plaintiff understates in explaining the "sole reason" ALJ Verne rejected Dr. Dobecki's opinion was "because of the *purported* lack of support from objective and clinical findings that showed *some* normal results." (Doc. No. 23, 50:11-13.) ALJ Verne's Notice of Decision dispels any notion of that the objective record was open to interpretation; it was not, and it did not support Dr. Dobecki's findings of significant impairments from which Plaintiff alleges he suffers.
///

Given the above, the Court concludes ALJ Verne properly considered Dr. Dobecki's opinion and appropriately discounted it for specific and legitimate reasons that are supported by substantial evidence throughout the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.2002) (the ALJ need not accept the opinion of any source, including a treating source, if that opinion is brief, conclusory, and inadequately supported by clinical findings.)

### d. Constitutional Process underlying ALJ Verne's Decision

Plaintiff lastly argues his disability benefits claim was decided under an unconstitutional delegation of authority to ALJ Verne. Plaintiff observes Andrew Saul was Commissioner of the Social Security Administration until President Biden terminated his appointment and cites to three Supreme Court decisions to conclude that, "because the authority was delegated through an unconstitutional appointment, [ALJ Verne's] adjudication [was] tainted." (Doc. No. 23, 53:19-21.) Having considered Plaintiff's argument and the precedent Plaintiff cites in support thereof, the Court finds there is no basis to conclude the SSA lacks the authority to adjudicate his claim for disability benefits.

Plaintiff first cites to *Seila Law, LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020) for the proposition that "insulation from removal by an accountable President is enough to render [an agency's] structure unconstitutional" and thus requires a new hearing before a properly appointed official. *Seila Law, LLC*, 140 S. Ct. at 2204. The conclusion Plaintiff draws is a bridge too far. In *Seila Law, LLC*, the Supreme Court held the Consumer Financial Protection Bureau ("CFPB") retained the authority to continue operating even after finding a separation of powers violation in the removal statute at issue. *Seila Law, LLC*, 140 S. Ct. at 2192. In *Seila Law, LLC*, a law firm subpoenaed by the newly created CFPB argued the subpoena was invalid because the agency's structure violated the Constitution on separation of powers grounds. The Supreme Court agreed. *Seila Law LLC*, 140 S. Ct. at 2194. The CFPB was led by a single director who could only be removed by the President for "inefficiency, neglect, or malfeasance." *Id.* at 2191. The Court reasoned this feature, amongst others, rendered the agency's structure "incompatible with our

constitutional structure" which "scrupulously avoids concentrating power in the hands of any single individual." *Id.* at 2191-92, 2202, 2204. Concurrently, however, the Supreme Court concluded the unconstitutional removal restriction was "severable from the other statutory provisions bearing on the CFPB's authority" and, in turn, the CFPB could continue to operate. *Id.* at 2192. The case was remanded for further consideration of the validity of the subpoena.[2] *Id.* at 2211. Accordingly, the *Seila Law, LLC* decision does not move the needle for Plaintiff.

Plaintiff next cites to *Collins v. Yellen*, 141 S. Ct. 1761 (2021) to advance his argument, but the case has no bolstering effect. In *Collins*, the Supreme Court viewed "*Seila Law* [as] all but dispositive" and concluded the "for cause" restriction on the President's removal power violated separation of powers in the context of a constitutional challenge to the statutory structure of the Federal Housing Finance Agency ("FHFA"). *Collins,* 141 S. Ct. at 1783, 1787. Even so, the Supreme Court found no constitutional defect in the method of the director's appointment and there was no reason to void the FHFA's actions. *Id.* at 1787. The Supreme Court reasoned there was "no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office." *Id.* at 1788. Consequently, the Supreme Court reasoned, a claimant seeking relief on separation of powers grounds would have to show the restriction on the President's removal power caused a compensable harm. *Id.* at 1788-89. For example, the Supreme Court observed there could be a compensable harm if the President "had attempted to remove a director but was prevented from doing so by a lower court decision holding that

---

[2] In dicta, the Supreme Court contrasted the SSA's structure with the CFPB's, observing "the SSA lacks the authority to bring enforcement actions against private parties. Its role is largely limited to adjudicating claims for Social Security benefits." *Seila Law LLC*, 140 S. Ct. at 2202. The Court suspects the Supreme Court's observation may be the impetus for the many recent, meritless separation of powers challenges in other SSA disability cases before the District Courts. *See, e.g.*, *Robinson v. Kijakazi*, 2021 WL 4998397 (W.D.N.C. Oct. 27, 2021); *Amanda B. v. Commissioner*, 2021 WL 4993944, at 9 (D. Or. Oct. 26, 2021); *Hester v. Commissioner*, 2021 WL 4476867 (W.D. Wa. Sept. 30, 2021).

he did not have 'cause' for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* at 1789. Ultimately, the Supreme Court determined there was no reason to nullify the FHFA's decisions in *Collins* because there was nothing to indicate the method of the agency director's appointment was unconstitutional or that the director "lacked the authority to carry out the functions of the office." *Id.* at 1788.

Plaintiff also cites a Memorandum Opinion prepared by the Deputy Counsel to the President entitled "The Constitutionality of the Commissioner of Social Security's Tenure Protection," 45 Op. O.L.C. ___, slip op. (July 8, 2021). This Memorandum Opinion follows *Collins* and *Seila Law*'s conclusion that the President "may remove the Commissioner of Social Security at will notwithstanding the statutory limitation on removal in 42 U.S.C. § 902(a)(3)."[3] *Id.* at 1. Concurrently, however, the Memorandum Opinion provides: "The conclusion that the removal restriction is constitutionally unenforceable does not affect the validity of the remainder of the statute." *Id.* To this end, the Court notes 42 U.S.C. section 902 indicates the Commissioner is appointed by the President "with the advice and consent of the Senate." 42 U.S.C. § 902(a)(1). Further, section 902(a)(7) empowers the Commissioner the authority to "assign duties, and delegate, or authorize successive redelegations of, authority to act and to render decisions, to such officers and employees of the Administration as the Commissioner may find necessary." Thus, even the Memorandum Opinion upon which Plaintiff relies agrees that this latter section on the delegation of authority remains valid.

/ / /

/ / /

---

[3] Section 902(a)(3) states in pertinent part as follows: "An individual serving in the office of Commissioner may be removed from office *only pursuant to a finding by the President of neglect of duty or malfeasance in office*." (emphasis added).

Plaintiff's additional citation to *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018) is similarly unmoving. *Lucia* involved an unconstitutional appointment of an ALJ in a matter before the Securities and Exchange Commission ("SEC"). In *Lucia*, the plaintiff challenged an SEC administrative proceeding on the grounds that the presiding ALJ was unconstitutionally appointed in violation of the Appointments Clause. The Supreme Court agreed. The record indicated the ALJ assigned to the plaintiff's case was appointed by "SEC staff members," but the Appointments Clause of the Constitution required that ALJs, as officers of the United States, had to be appointed by the President, a court of law, or the head of a department. *Lucia*, 138 S. Ct. at 2050-52. The remedy for the unconstitutional appointment by SEC staff members was a new hearing before a properly appointed ALJ. *Id.* at 2055.

*Seila Law*, *Collins*, and the Memorandum Opinion referenced in Plaintiff's argument indicate that section 902(a)(3), the removal statute that applies to the Commissioner of the SSA, is akin to the statutory removal provisions in these Supreme Court cases and may thus violate separation of powers for restricting the President's power to remove the Commissioner of the SSA. Nonetheless, this does not signify that the ALJ's adjudication of Plaintiff's disability claim was rendered under an unconstitutional delegation of authority. As *Seila Law, LLC* and *Collins* reflect, the relevant language from the governing removal statutes that violated separation of powers were severable from other provisions governing the operations of the CFPB and the FHFA. On account of this statutory severability, both agencies' operations could continue and their decisions could still stand. Here, even if the Court assumes that section 902(a)(3) violates separation of powers, Plaintiff has not presented any facts indicating such violation impacted the SSA's operations or that anyone involved in adjudicating his disability claim at the SSA otherwise lacked the authority to do so. *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year . . . given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone.").

Although *Collins* suggested the prospect of a party establishing "compensable harm" based on a separation of powers violation in a removal statute, the Supreme Court clarified that the "compensable harm" would require a direct nexus to a separation of powers violation. *Id.* at 1788-89. Here, there is no appreciable direct nexus between the ALJ's adjudication of Plaintiff's disability claim and the alleged separation of powers violation in the removal statute that applies to the Commissioner. Plaintiff's allegations merely amount to a frustration with ALJ Verne's ultimate finding of non-disability and the SSA's resulting denial of disability benefits. Taken together, the Supreme Court's decisions in *Seila Law, LLC*, *Collins*, and *Lucia* do not substantiate Plaintiff's argument that ALJ Verne's Notice of Decision emanates from an unconstitutional delegation of authority. The Court will not discredit the Notice of Decision on such basis.

## VI.   CONCLUSION

Given the foregoing, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

DATED:  March 24, 2022

Hon. William V. Gallo
United States Magistrate Judge